**CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY, Appellant,**

v.

**Rita SHOEMAKE, Appellee.**

No. 16727.

Court of Civil Appeals of Texas.

Dallas.

May 20, 1966.

Rehearing Denied June 17, 1966.

Thompson, Coe, Cousins & Irons, Franklin H. Perry, Dallas, for appellant.

McKool & McKool, Robert J. Shoemaker, Dallas, for appellee.

WILLIAMS, Justice.

This is an action brought by Rita Shoemake against Cambridge Mutual Fire Insurance Company upon a Texas Standard Homeowner's Insurance Policy for loss of personal property. The defendant insurance company sought to avoid liability by asserting a portion of the policy which specifically excluded loss caused by or resulting from flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water or spray from any of the foregoing, all whether driven by wind or not.

The case was submitted to the jury which found (1) that the loss to the personal property was caused solely by wind and (2) that the loss to the personal property was not caused by surface water, waves or spray, whether driven by wind or not.

The trial court rendered judgment for the plaintiff based upon the jury's answers to these issues and the defendant, in four points of error, contends that such action was error in that there was no evidence or insufficient evidence to support the jury's answers to the respective special issues.

We agree with appellant and therefore the judgment of the trial court must be reversed.

The following is a fair summarization of the testimony:

Mrs. Shoemake testified that her husband, an inveterate fisherman for thirty years, left home on April 12, 1964 at about 12:45 p. m. taking with him a large quantity of fishing articles. She said he was going to Lake Tawakoni to fish. She did not go with him to the lake and did not learn what happened to her husband until the following day when he was discovered drowned. She did not know any of the circumstances of the loss of the personal property. Mr. Shoemake's nephew, Randy Zoeller, testified that he was not at the lake with his uncle but arrived the next day. Mr. Shoemake's automobile and trailer were located but did not contain any of the personal property. Randy Zoeller does not know any of the facts and circumstances concerning the loss. Mr. W. J. Price, the Sheriff of Rockwall County, went to Lake Tawakoni on April 12 but he did not see any incident and does not even remember seeing any boat involved in a drowning. He did not know Mr. Shoemake. He said there was more than one drowning incident at Lake Tawakoni on April 12, 1964. He said that he was at the lake on April 12 and that the wind was blowing very high and that the waves seemed large to him; that such waves caused the lake to be "rough".

It seems to be undisputed that Mr. Shoemake's body was found, as was his boat, but there were no eyewitnesses to the accident.

In an action of this kind upon an insurance policy the burden of proof was up-

on appellee not only to prove that the loss came within the insurance contract but that such loss was not excluded therefrom. Hardware Dealers Mutual Ins. Co. v. Berglund, Tex., 393 S.W.2d 309.

Appellee concedes that there were no eyewitnesses available to testify as to the loss in question and that she was required to depend upon circumstantial evidence to establish her cause of action. These circumstances, taken at their very best, indicate nothing more than that Mr. Shoemake left home on April 12, 1964 to go fishing at Lake Tawakoni and that he took with him his usual fishing equipment, together with his boat. He was later found dead from drowning and the personal property was gone. However, the record demonstrates rather clearly that there was a high wind at the lake which caused the waves to be high on the occasion in question. From this testimony it is sought to be inferred that the property was lost at Lake Tawakoni on the day in question and that such loss was due to the windstorm and nothing else. While we may very well assume that the windstorm contributed to the loss it may also be logical to assume that the boat capsized due to the action of the wind and the waves. There is no proof that the waves did not contribute to the loss although it is logical to assume that such did occur. It is logical to conclude that an ordinary boat would not capsize due to the action of the wind without the rough waves.

Moreover, we believe that from the evidence in this case the inference that the boat capsized due to the wind and the rough waves is just as reasonable and probable as an inference that the boat capsized solely due to the action of the wind.

In Paris & M. P. R. Co. v. Russell, Tex. Civ.App., 104 S.W.2d 650, the court said:

"The rule is that when, in a given case, the existence, or not, of an ultimate fact issue can only be found as an inference from evidentiary facts, the party having the burden of proof upon the issue must produce evidence to warrant the jury in believing that an inference of the issuable fact is more probable or reasonable than an inference of its nonexistence. As this court has recently had occasion to say, 'if an inference consistent with the existence of a fact in issue is but equally as valid as an inference of its nonexistence, then the jury may not determine the question.' Texas Pac. Fid., etc., Co. v. Hall [Tex.Civ.App], 101 S.W.(2d) 1050, 1052, and authorities there cited."

In this connection see also Chanowsky v. Friedman, Tex.Civ.App., 205 S.W.2d 641; Benson v. Missouri, K. & T. R. Co., Tex. Civ.App., 200 S.W.2d 233, 332 U.S. 830, 68 S.Ct. 206, 92 L.Ed. 403; and National Aid Life Ass'n v. Driskill, Tex.Civ.App., 138 S. W.2d 238.

The Houston Court of Civil Appeals in the recent case of Republic National Life Ins. Co. v. Bullard, Tex.Civ.App., 399 S.W. 2d 376 had before it a question very similar to this. In that case, being a suit under a double indemnity provision of a life insurance policy, the insured, Bullard, had a history of heart trouble. On the occasion in question he was riding a horse, with other employees of the Texas Prison System, hunting escaped prisoners. He was last seen riding to catch up with other guards. Later, these guards saw his horse, riderless, and one of them went and discovered Bullard, beside the path. He died shortly after without gaining consciousness. The appellate court examined all of the circumstantial evidence tending to prove that Bullard died as a result of falling from the horse and also tending to prove that he died as a result of his chronic heart ailment. The court said, *inter alia*:

"However, a court or jury may not be left to speculate. The evidence must give rise to more than a surmise or suspicion that death resulted solely from accidental injuries. If there is no direct evidence as to the existence of an ultimate fact and the proven circumstances are consistent with either of two theories and

there is nothing to show that one rather than the other probably is correct, then neither is proven." (Citing cases.)

\* \* \* \* \* \*

"The evidence in this record is equally consistent with the conclusion that Mr. Bullard had a heart attack and fell from the horse."

We think that appellee has wholly failed to sustain her burden of proof in this case by legally competent evidence. The judgment of the trial court must be reversed and rendered that appellee take nothing from appellant.

Reversed and rendered.